IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE
Bangor Division

| | |
|---|---|
| JAMES M. SCHATZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:10-cv-00528-DBH |
| ) | |
| REPUBLICAN STATE ) | |
| LEADERSHIP COMMITTEE, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

DEFENDANTS' MOTION TO DISMISS WITH
INCORPORATED MEMORANDUM OF LAW

Defendants Crossroads Media LLC, Patti Heck, Michael Dubke, Arena Communications LLC, Ohman Holdings LLC, Valcarce Holdings LLC, Arena Holdings Inc., The Grassy Knoll LLC, Richard J. Ohman, and Peter J. Valcarce (collectively, "Defendants"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby submit this motion to dismiss the complaint of Plaintiff James M. Schatz ("Plaintiff" or "Schatz") in the above-titled case, for failure to state a claim upon which relief can be granted.

INTRODUCTION

All Plaintiff's allegations arise from political advertisements published during a contested election campaign. Statements involving politics and public officials are among the most sacred and protected types of speech under First Amendment jurisprudence: "[I]t is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions . . . ." *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964). As in all cases involving political speech, the Court must "consider this case against the background of a

profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Id.* at 270. This strong Constitutional protection cannot be pierced unless the speech at issue is both false and defamatory, and made with actual malice.

Erroneous statements are "inevitable in free debate" and "must be protected if the freedoms of expression are to have the 'breathing space' that they 'need . . . to survive.'" *Id.* at 271-72. The Supreme Court long ago rejected the notion that critics of public officials must ensure the truth of all factual assertions about those officials; such rules result in self-censorship and deter the would-be critics from speech that might prove to be technically false. *Id.* at 279. "The First Amendment affords the broadest protection to such political expression in order to 'assure (the) unfettered interchange of ideas for the bringing about of political and social changes desired by the people . . . .' [T]here is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs . . . of course includ(ing) discussions of candidates . . . ." *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (internal citations omitted).

The political flyers attached to the Complaint did nothing more than highlight and criticize Schatz's actions and public statements as an elected official—specifically, his decision to support an allocation of public funds to an interest group on one hand, and his public support for failing to fund Fourth of July fireworks on the other. Consequently, Schatz's effort to silence legitimate political speech critical of his public positions should be rejected, and his Complaint should be dismissed with prejudice.

## FACTS

Plaintiff is a politician who ran unsuccessfully for the Maine Senate in 2010. (Compl. ¶ 2.)  Schatz was a three-term member of the Maine House of Representatives at the time the political advertisements were published. (*Id.*)  Plaintiff also is a selectman for the Town of Blue Hill. (Compl. ¶ 35.)

In January 2008, the Blue Hill selectmen unanimously approved $10,000 to be paid "as a contribution toward costs associated with the efforts to repeal Maine's school consolidation law." (Compl. ¶ 41 & Ex. I.)  This $10,000 was paid to The Maine Coalition to Save Schools, a registered political committee, in three installments between January 2008 and July 2009. (Compl. ¶ 41.)  Schatz fully supported this allocation of funds to a political group in statements attributed to him in the *Kennebec Journal*:

> Schatz, the Blue Hill selectman, acknowledged that questions come up when municipalities contribute to political causes.  But "a lot of rural, small schools have been hurt" by consolidation, he said.  "If (one) were to examine the issue, it would seem appropriate" to contribute to the repeal campaign.

(Compl., Ex. H.)

In March 2009, the Blue Hill selectmen voted not to fund a Fourth of July fireworks display in 2009. (Compl. ¶ 41.)  Schatz fully supported that decision in statements attributed to him in the *Bangor Daily News*:

> Given the economy, we felt that in good conscience we couldn't do it this year. We thought that to spend that much money on something that will light things up for a few seconds and then is gone was not the thing to do.  Unless we were sure we could pay the town back, we didn't want to pull the trigger on it this year.

(Compl. Ex. G.)  However, though he said nothing of the underlying vote to the *Bangor Daily News*, Plaintiff now alleges he voted to fund the 2009 fireworks display, but was outvoted 2-to-1 by his fellow selectmen. (Compl. ¶ 41.)

During the 2010 general election campaign, Defendants published statements to Maine voters that Plaintiff claims are false and defamatory. (Compl. ¶¶ 33-35.) Schatz complains of statements made in political flyers that were mailed to voters (Compl. ¶ 33) and in "certain television and radio political advertisements" (Compl. ¶ 36). Plaintiff neither quotes nor attaches to the Complaint the broadcast advertisements mentioned in paragraph 36. Rather than quote the allegedly defamatory statements in the political flyers, Plaintiff gives them his own gloss (Compl. ¶ 37) and attaches them to the Complaint. (Compl., Exs. D, E & F.) All three political flyers cite the *Bangor Daily News* (Compl., Ex. G) and the *Kennebec Journal* (Compl., Ex. H) articles as sources for these statements.

Each flyer contains the statement that Schatz "voted to cancel the $10,000 fireworks celebration for the Fourth of July" in 2009, and "paid" or "gave" "10,000 taxpayer dollars to a political organization." (*See* Exs. D, E & F.) Specifically, the front of Exhibit D features a child holding an American flag and the words, "NO FIREWORKS on the 4th of July because Jim Schatz did what?" On the back of Exhibit D are an American flag, a photo of Schatz, and the words, "Baseball, apple pie 4th of July and FIREWORKS? NOT THIS 4TH OF JULY. JIM SCHATZ HAD OTHER PRIORITIES: Schatz and the Blue Hill Selectmen paid 10,000 taxpayer dollars to a political organization. Schatz then voted to cancel the $10,000 fireworks celebration for the Fourth of July—blaming it on a bad economy. THAT'S WRONG". At the bottom are the following words: "TAXPAYER DOLLARS TO POLITICAL GROUPS—BUT NOT FOR AN INDEPENDENCE DAY CELEBRATION: VOTE November 2nd, and let Jim Schatz know what you think of his priorities."

The front of Exhibit E features a child yelling in anger under the caption, "This child just found out Jim Schatz cancelled 4th of July fireworks." The back of Exhibit E features an adult

yelling in anger under the caption, "This taxpayer just found out Jim Schatz used tax-payer money to make a political contribution."  Next to a photo of Plaintiff are the words, "Schatz and the Blue Hill Selectmen paid 10,000 taxpayer dollars to a political organization.  Schatz then voted to cancel the $10,000 fireworks celebration for the Fourth of July.  On November 2, stop the government misuse of your hard-earned money.  On November 2, Vote against Jim Schatz."

The front of Exhibit F states, "No Rockets' Red Glare, No Bursting in Air.  Thanks to JIM SCHATZ…"  On the back of Exhibit F is a bundle of currency with burning wick, a photo of Plaintiff, and the words:

> Jim Schatz voted to cancel the $10,000 fireworks celebration for the Fourth of July—blaming it on a bad economy.  However, before canceling the show, Schatz and the Blue Hill Selectmen gave 10,000 taxpayer dollars to a political organization.  It's wrong for Schatz to give your money to a political organization, and it was wrong for Schatz to cancel your 4th of July celebration.  On November 2, Vote against Jim Schatz, because he's wrong for Maine.

The Complaint does not directly quote any of the language from the advertisements, and none of the advertisements contain language accusing Schatz of committing theft of public funds or of violating any state or federal law.   Nonetheless, Plaintiff contends in conclusory fashion that the advertisements are "defamatory in that they falsely accused plaintiff of misappropriation of public funds for personal political purposes, amounting to a charge of theft of public funds as a Class C crime within the meaning of 17-A M.R.S.A. §§ 353, 358." (Compl. ¶ 37.)  Plaintiff alleges that ""[t]he only source" for the alleged defamatory statements were two newspaper articles (Compl. ¶38), that "[n]either newspaper article contained information that supported" the statements made in the political flyers (Compl. ¶ 39), and that "[n]o defendant conducted or authorized any additional investigation to ascertain the truth and non-defamatory character of" the statements (Compl. ¶ 40).

Based solely on the foregoing, the Complaint alleges that "each defendant acted with

actual malice, having actual knowledge of the false and defamatory nature of the statements published by defendants . . . or, in the alternative, having reckless disregard of and with serious doubt about the truth or falsity of such statements." (Compl. ¶ 44.)  However, the Complaint asserts no factual basis for its legal conclusions that Defendants published the advertisements with knowledge or reckless disregard of their alleged truth or falsity.

Under the heading "Count II – Intentional Infliction of Emotional Distress," Plaintiff concludes, "Defendants' actions as herein set forth were conducted so intentionally or recklessly that serious emotional distress was substantially certain to result, and did in fact result.  Such actions exceeded all possible bounds of decency and must be regarded as atrocious and utterly intolerable." (Compl. ¶ 50.)  Plaintiff adds that he "has suffered severe emotional distress of such severity that no reasonable person could be expected to endure it," and that he "has further incurred the cost of counseling and related care." (Compl. ¶ 51.)  The Complaint asserts no other factual basis for Schatz's alleged severe emotional distress or alleged damages.

Regarding "Count III – Publicly Placing Plaintiff in a False Light," Plaintiff alleges no additional facts but concludes that Defendants "placed [him] before the public in a false light that was highly offensive to [him] and would be highly offensive to a reasonable person." (Compl. ¶ 53.)  Plaintiff re-alleges the legal definition of actual malice (Compl. ¶ 54), and repeats that he has suffered damages "including severe emotional distress, anxiety, personal humiliation, embarrassment, and loss of reputation in the community," as well as "the cost of counseling and related health care." (Compl. ¶ 55.)

### STANDARD OF DECISION

Plaintiff gives three causes of action for his Complaint: defamation, intentional infliction of emotion distress ("IIED"), and false light.  Under the applicable pleading standard, "'a

6

plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Damon v. Moore*, 520 F.3d 98, 102-03 (1st Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, Schatz's "'[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'"  *Id.* at 103 (quoting *Twombly*, 550 U.S. at 555).

The Supreme Court has adopted a two-step approach to determine whether a complaint meets this standard.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  First, the Court should disregard all mere legal conclusions in the Complaint.  *See id.* at 1949-50 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  Second, the Court should determine whether the remaining well-pled, non-conclusory factual allegations, standing alone, amount to a plausible claim for relief.  *See id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  Under this standard of decision and the applicable law, the Complaint utterly fails to state any claim upon which relief can be granted, and so should be dismissed.

**ARGUMENT**

## I.      Plaintiff Does Not Properly Plead Any Defamatory Statements.

Plaintiff fails to quote or to attach to the Complaint any of the allegedly defamatory broadcast statements, and neglects to quote the exact words from the political flyers that he considers defamatory.  This is inadequate.  *See Picard v. Brennan*, 307 A.2d 833, 834-35 (Me. 1973) ("Having in mind that proof of the truth of statements alleged to be slanderous is always a defense, and that the defendant is therefore entitled to know precisely what statement is

attributed to him, we have always required that 'the words must be proved strictly as alleged.'") (citation omitted) (reversing judgment for plaintiff).

Here, as in *Picard*, Plaintiff alleges Defendants accused him of committing a crime – "misappropriation of public funds for personal political purposes" – and claims he was defamed by statements about the Blue Hill selectmen's failure to allocate funding for Fourth of July fireworks. But Plaintiff fails to identify precisely what statements contain the allegedly false and defamatory allegations. Consequently, Defendants cannot know exactly what statements are at issue, whereas Plaintiff cannot dispute that none of the attached advertisements actually make an allegation of criminal conduct. Plaintiff's own gloss on the political flyers will not suffice.[1] Nor should Plaintiff be allowed to proceed on the off-hand claim that the broadcast "advertisements made, in essence, the same allegations as those contained in" the political flyers. (Compl. ¶ 36.) Because these statements provide the entire factual support for Counts I, II and III, the Complaint should be dismissed altogether.

## II.    The Political Flyers Are Not Defamatory as a Matter of Law.

### A.    The political flyers do not defame Plaintiff.

Even if Plaintiff were permitted to re-plead his allegations by quoting the advertisements, Plaintiff's case suffers from a fundamental defect that cannot be cured by re-pleading: no reasonable person, reading in context the statements about the Blue Hill selectman allocating funds to an interest group or the decision to not fund Fourth of July fireworks, would have understood them to defame Plaintiff. "A communication is defamatory 'if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons

---

[1] "The statements . . . were false and defamatory in that they falsely accused plaintiff of misappropriation of public funds for personal political purposes, amounting to a charge of theft of public funds as a Class C crime within the meaning of 17-A M.R.S.A. §§ 353, 358." (Compl. ¶ 37.)

from associating or dealing with him.'" *Bakal v. Weare*, 583 A.2d 1028, 1029 (Me. 1990)

(quoting RESTATEMENT (SECOND) OF TORTS § 559 (1977)).  In other words, "[a] statement is

defamatory if it naturally tends to expose the plaintiff to public hatred, contempt or ridicule."

*Levesque v. Doocy*, 557 F. Supp. 2d 157, 166 (D. Me. 2008) (citation omitted).

"Whether the statement complained of is capable of conveying a defamatory message at

all is a question of law." *Bakal*, 583 A.2d at 1030.  "A defamation claim may not be based solely

on a reading that interprets the language in the most negative way possible." *Veilleux v. NBC*,

206 F.3d 92, 108 (1st Cir. 2000).  Rather,

> In determining whether a given publication is libelous, the language thereof must
> be taken in its ordinary significance and must be construed in the light of what
> might reasonably have been understood therefrom by the persons who read it.
> The question is how would persons of ordinary intelligence understand the
> language.  The published article alone must be construed, stripped of innuendo,
> insinuation, colloquium, and explanatory circumstances.   In interpreting the
> language, it is not a question of the intent of the speaker, or author, or even of the
> understanding of the plaintiff, but of the understanding of those to whom the
> words are addressed and of the natural and probable effect of the words upon
> them.

*Picard*, 307 A.2d at 835 (quoting *Chapman v. Gannett*, 171 A. 397, 398 (Me. 1934)).

Further, "a court should consider the context in which the challenged statement is made,

viewing it within the communication as a whole." *Levesque v. Doocy*, 560 F.3d 82, 88

(1st Cir. 2009).

In *Bakal*, for example, the defendant stated in a letter to a city employee (who put the

letter in a public file) that the plaintiff, her neighbor, had subjected her to "ten years of . . .

threats" in a running dispute stemming from sewage disposal on her property.  583 A.2d at 1029.

The court "reject[ed] Bakal's approach that interprets the word 'threats' in the most negative way

possible to mean threats of physical violence."  *Id.* at 1030.  The court continued, "Bakal's

asserted interpretation is unsupportable is even more apparent when the statement is read in

9

context, as it must be." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 563 cmts. d & e).

> Weare's letter is in the same file as the one from Bakal that prompted it, in which he reiterates his ongoing complaint of inadequate sewage treatment at the Cliff House.  Taken together, these letters make it clear that there is an active, ongoing dispute about water treatment at the Cliff House.  Various courts have found that epithets much stronger than the word 'threats' here at issue cannot convey any defamatory meaning because they occur in the context of similarly heated public controversies.

*Id.* (citing *Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 283-84, (1974) ("traitor");

*Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) ("blackmail"); *McCabe v.

Rattiner*, 814 F.2d 839, 842-43 (1st Cir. 1987) ("scam"); *Lukashok v. Concerned Residents of N.

Salem*, 160 A.D.2d 685 (N.Y. App. Div. 1990) ("terrorism")).

This case also bears a strong resemblance to *Aldrich v. Boyle*, 101 N.E.2d 495 (Mass.

1951), which involved a defamation claim by a politician for criticism of him published in a

newspaper "political advertisement" during an election campaign.[2]  The plaintiff "argue[d] that

the publication contained imputations of dishonesty on his part." *Id.* at 496.  But the court

affirmed the orders sustaining the demurrers to his complaint, holding "that the words, taken in

their natural sense and without a forced or strained construction, are not defamatory." *Id.*  The

court simply could "not see how the advertisement, published as it was in the course of a

political campaign, could injure the plaintiff's reputation in the community or expose him to

hatred, ridicule, and contempt." *Id.*  On the contrary, "[r]ightly understood, it is the customary

type of hortatory appeal commonly made to voters at election time." *Id.  See also Borski v.

Kochanowski*, 331 N.E.2d 556, 559 (Mass. App. 1975) (affirming orders sustaining demurrers on

the ground that statements made in a "political advertisement" are not capable of a defamatory

meaning: "In a political campaign, the exaggerated character of normal political discussion is

---

[2] The newspaper advertisement in *Aldrich* is reproduced in the regional reporter, attached hereto as Exhibit 1 for the Court's convenience.

usually intensified.").

Here, as in *Bakal*, *Aldrich* and *Borski*, the context shatters Plaintiff's strained construction of the political flyers. The statements at issue were made in political campaign literature replete with incendiary graphics (literally, at least in the case of Exhibit F) during a heated contest for public office. Like the political advertisements in *Aldrich* and *Borski*, the statements were obviously pointed political appeals, each bearing the requisite disclaimer that they were "paid for by the Republican State Leadership Committee." The political flyers contained the sort of heightened rhetoric and colorful imagery to which Americans have long since become accustomed. No Maine voter receiving any of the political flyers in question would have thought they were anything other than "the customary type of hortatory appeal commonly made to voters at election time." *Aldrich*, 101 N.E.2d at 496.

### 1.   Allocations to a political interest group are legal, not criminal.

No reasonable voter would construe these advertisements as Plaintiff (like the plaintiffs in *Bakal*, *Aldrich* and *Borski*) does. The political flyers alleged Schatz, in his role as a town selectman, "paid" or "gave" "10,000 taxpayer dollars to a political organization." Plaintiff admits the truth of this allegation (Compl. ¶ 41) but proceeds to argue Defendants said something entirely different, i.e., that he is guilty of "theft of public funds as a Class C crime" (Compl. ¶ 37). None of the advertisements accuse Schatz of theft or any other crime. Elected officials routinely vote to allocate funds toward myriad governmental initiatives, and nothing about this process is remotely illegal. It is undisputed that the Town of Blue Hill, by an affirmative vote that included Selectman Schatz, decided to allocate $10,000 to The Maine Coalition to Save Schools, and Defendants never stated or implied otherwise. In fact, the *Kennebec Journal* article cited in the political flyers as the source for this statement reports that

such contributions are perfectly legal.[3]

> **2.    However Schatz voted, he publicly supported the decision not to pay for fireworks.**

Schatz does not deny that he publicly supported the decision to not fund Fourth of July fireworks, nor could he: his support for that decision is documented in the *Bangor Daily News* article attached to the Complaint.  The advertisements merely highlighted Schatz's own public statements about an issue of public interest.  Therefore, nothing in the advertisements falsely harmed Schatz's reputation.

In conclusion, the statements that actually appear in the advertisements do *not* falsely accuse Schatz of committing a crime and do *not* falsely characterize his public position about funding Fourth of July fireworks.  The advertisements accurately portrayed Schatz's public decisions and views and criticized them.  Accordingly, the advertisements did not falsely harm Schatz's reputation or falsely expose him to public hatred or contempt.  *See Aldrich*, 101 N.E.2d at 496.  For this reason, the Complaint should be dismissed.

> **B.    The Complaint and its attached exhibits show that the political flyers are true or substantially true.**

The allegedly defamatory statement that Plaintiff "paid" or "gave" "10,000 taxpayer dollars to a political organization" must be dismissed because the statement, read in context, is true.  "A substantially true statement does not provide adequate basis for a defamation claim under Maine law."  *Levesque*, 560 F.3d at 88.  It is basic principle of the defamation law that the false statement must also be the statement carrying the defamatory "gist" or "sting".  *See, e.g.*, *McCullough v. Visiting Nurse Serv.*, 691 A.2d 1201, 1204 (Me. 1997) ("An essential element of

---

[3] "According to [Dick] Dyer, there's no reason that can't involve [sic] committing town funds to advancing a political cause.  Town officials 'make decisions all the time that are political in nature that involve spending taxpayers' dollars,' he said."

a claim for defamation is the existence of a false *and* defamatory statement concerning the plaintiff.") (emphasis added); *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991) ("Minor inaccuracies do not amount to falsity so long as the 'substance, the gist, the sting, of the libelous charge be justified.'") (citation omitted).  In this instance, Schatz supported funding a political organization while serving as a town selectman, and the political advertisements took issue with that funding initiative during a contested campaign for public office.  Therefore, the words "paid" or "gave" reasonably signified votes or decisions by the selectmen to allocate funds to The Maine Coalition to Save Schools.  In this context, it is patently unreasonable to conclude that the words "paid" or "gave" connote theft or the commission of a crime.

The alleged false statements in the advertisements about Schatz's vote in connection with funding Fourth of July fireworks is also, read in context, substantially true.  Plaintiff seizes upon the literal falsity of the statement that he "voted to cancel the $10,000 fireworks celebration for the Fourth of July" in 2009, contending that he actually voted to fund the fireworks.  However, Schatz unequivocally and publicly supported the decision to not fund the fireworks in statements he made to the *Bangor Daily News*.

*McCullough* addressed the principle of 'substantial truth' in a manner that supports dismissal here.  Plaintiff argued it was false and defamatory for one of the defendant's employees to state that she was fired for "several incidents," when in fact she was fired for only two incidents.  691 A.2d at 1204.  The court explained that this statement "is substantially true even though it may not be technically accurate.  To a reasonable person, the statement that McCullough was discharged because of several incidents is no more damaging to her reputation than an accurate statement would have been, namely, that she had been discharged because of two incidents."  *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 581A cmt. f (1977) ("It is not

13

necessary to establish the literal truth of the precise statement made.  Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance.")).

Here, the political flyers allege Plaintiff "voted to cancel the $10,000 fireworks celebration for the Fourth of July" in 2009.  Even if it is technically inaccurate to say Plaintiff "voted" to cancel the fireworks display, the advertisements accurately portrayed Schatz's public position on the funding allocation, particularly in light of Schatz's statements to the *Bangor Daily News*:

> Given the economy, **we** felt that in good conscience **we** couldn't do it this year.
> **We** thought that to spend that much money on something that will light things up
> for a few seconds and then is gone was not the thing to do.  Unless **we** were sure
> **we** could pay the town back, **we** didn't want to pull the trigger on it this year.

(Compl., Ex. G) (emphasis added).  Not once did Schatz distinguish his vote from the decision that "we" (the Blue Hill selectmen) made about failing to fund the fireworks.  Based on Schatz's own public statements, it was substantially true that he supported failing to fund (and effectively cancelling) the 2009 fireworks celebration.  The alleged technical inaccuracy – "voted" instead of "supported" – in the political flyers "is no more damaging to [Schatz's] reputation than an accurate statement would have been."  *McCullough*, 691 A.2d at 1204.

In summary, based entirely on the admissions and allegations in the Complaint and in its attached exhibits, the political flyers are substantially true and therefore cannot support a claim for defamation.  The Complaint should be dismissed for this reason as well.

### C.     Plaintiff has not adequately alleged that Defendants published the political flyers with actual malice.

Because Plaintiff is a politician and the political flyers directly relate to matters of public concern, the defamation claims in this case must adequately allege the statements were made with actual malice.  Statements about "public officials like [Schatz] deserve constitutionally-protected 'breathing space' in a democratic society and thus are subject to a conditional privilege

that is overcome only by clear and convincing evidence that the defamatory statement was made with actual malice, in other words with knowledge that the statement was false or with reckless disregard of whether it was false or not." *Levesque*, 560 F.3d at 87 (citing *New York Times Co.*, 376 U.S. at 272, 279-80).

Accepting the facts alleged in the Complaint as true for purposes of this motion, Plaintiff has made no factual allegations that support the conclusory allegation that Defendants published the statements in the political flyers with knowledge or reckless disregard of any false, defamatory statement. Even if the Court concludes that Defendants were somehow negligent, which would *not* be justified given the allegations in this case, mere negligence "is constitutionally insufficient to show the recklessness that is required for a finding of actual malice." *New York Times Co.*, 376 U.S. at 288; *see also Levesque*, 557 F. Supp. 2d at 169 ("If negligence as to the reliability of a source were the standard, this should be enough . . . . But unprofessional conduct does not amount to reckless disregard of the truth, and 'failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard.'") (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989)). Because Plaintiff has not alleged any facts going beyond simple negligence, the Complaint should be dismissed.

Plaintiff pleads no facts showing that Defendants published the advertisements with knowledge or reckless disregard that statements in the advertisements were false. "Recklessness amounting to actual malice may be found where a publisher fabricates an account, makes inherently improbable allegations, relies on a source where there is an obvious reason to doubt its veracity, or deliberately ignores evidence that calls into question his published statements." *Levesque*, 560 F.3d at 90. Plaintiff does not allege Defendants unjustifiably relied on the facts

15

reported in the *Bangor Daily News* and *Kennebec Journal*.  Unlike the publication in *Levesque*, which appeared in the "humor" section of an open-source website, these are both well-established and reputable newspapers, and the stories themselves gave Defendants no reason to doubt the truth of the facts reported therein.[4]  In fact, Plaintiff does not allege that either article was false in any respect.

Other than conclusory legal language, which must be ignored under *Iqbal*[5], Schatz's lone allegations regarding intent do not state a claim for actual malice[6].  It is important to note, given the language of this Complaint, that "[f]ailure to investigate does not in itself establish bad faith."  *St. Amant v. Thompson*, 390 U.S. 727, 733 (1968).  The Complaint alleges only that "[n]either newspaper article contained information that supported" the statements at issue in this case (Compl. ¶ 39),[7] and "[n]o defendant conducted or authorized any additional investigation to ascertain the truth and non-defamatory character of statements published . . . ." (Compl. ¶ 40).

---

[4] *Cf. Levesque*, 557 F. Supp. 2d at 169 ("The defendants were certainly gullible.  Even if they believed the segments of Plagman that they repeated on the air, at least two portions of the Plagman piece were so absurd that they should have raised the defendants' truth-seeking antennae and caused them to question the accuracy of the article as a whole.").

[5] The Court cannot give any weight to Plaintiff's rote recitation of the definition of actual malice, since it is simply a legal conclusion bereft of factual support. (*See* Compl. ¶ 44.)

[6] The factual allegations in paragraph 43 of the Complaint are irrelevant to a showing of actual malice.  Even if Defendants acted "with the intention of damaging the reputations of plaintiff and certain other Democratic candidates for state political offices," (Compl. ¶ 43), "[a]ctual malice under the *New York Times* standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will."  *Masson v. New Yorker Magazine*, 501 U.S. 496, 510 (1991); *see also Beckley Newspapers Corp. v. Hanks*, 389 U.S. 81 (1967) (overturning verdict for plaintiff on defamation jury instruction equating actual malice with "personal spite, ill will or a desire to injure plaintiff").

[7] Court need not accept this factual allegation since it is flatly contradicted by the articles themselves, which are attached to Plaintiff's complaint. *See, e.g., Clorox Co. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.") (citation omitted).

The only reasonable inference from Plaintiff's own allegations is that due to lack of further research, Defendants published the advertisements without knowledge of any conflicting facts, choosing instead to rely on the statements Schatz made to reputable local newspapers.  This falls far short of actual malice or reckless disregard for the truth.

 The Court should dismiss Plaintiff's Complaint for failing to state any facts that could show actual malice, which is the Constitutionally required standard for politicians like Plaintiff.

### III.   Plaintiff Fails to State Claims Either for IIED Or for False Light.

Plaintiff alleges intentional infliction of emotional distress (Count II) and false light (Count III), both of which are "simply [ ] restatement[s] of his defamation claim under [ ] different heading[s]."  *Brown v. Hearst Corp.*, 54 F.3d 21, 27 (1st Cir. 1995).  Because Plaintiff fails to state a claim for either tort, these counts also should be dismissed.

#### A.   The facts alleged in the Complaint do not support an IIED claim.

"[T]he Law Court has held that an IIED claim may not rest on a claim for defamation: if the defendant is not found liable for the defamation, then there can be no IIED recovery based on the same conduct; and if the defendant is liable in defamation, then the plaintiff's damages for any IIED claim are subsumed by the damages caused by the defamation."  *Janicki v. John Bapst Mem'l High Sch.*, 2002 Me. Super. LEXIS 128, *26-*27 (Me. Super. Ct. June 11, 2002) (citing *Rippett v. Bemis*, 672 A.2d 82, 87-88 (Me. 1996)).  Plaintiff's IIED claim should be dismissed for this reason alone.

Plaintiff also must prove actual malice as an element of IIED.  *See Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988) ("We conclude that public figures and public officials may not recover for the tort of intentional infliction of emotional distress by reason of publications such as the one here at issue without showing in addition that the publication contains a false

statement of fact which was made with 'actual malice'"); *see also Fiacco v. Sigma Alpha Epsilon Fraternity*, 528 F.3d 94, 101-02 (1st Cir. 2008).  As discussed in Section II.C *supra*, the factual allegations in the Complaint do not fairly constitute negligence, let alone actual malice.

Further, it strains credulity to believe that that the political flyers (which are not false, see Section II.B *supra*) are "so 'extreme and outrageous' as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious, and utterly intolerable in a civilized community.'" *Vicnire v. Ford Motor Credit Co.*, 401 A.2d 148, 154 (Me. 1979) (adopting RESTATEMENT (SECOND) OF TORTS (1965) § 46, cmt. d).  *Cf. Botka v. S.C. Noyes & Co.*, 834 A.2d 947, 951 (Me. 2003) (upholding trial court's summary judgment holding that defendant's conduct was not so "extreme and outrageous" to support an IIED claim, when defendant allegedly interfered with plaintiffs' business activities; frequently interrupted, berated, insulted, and harassed plaintiffs alone or in front of clients or others; initiated a physical confrontation with one of the plaintiffs; acted imperiously; threatened plaintiffs with eviction from the premises and disrupted their use of the premises; and, directed plaintiffs not to sell property to people of color).  For all of the foregoing reasons, Plaintiff's IIED claim must be dismissed.

**B.      Plaintiff cannot sustain a false light claim.**

Like defamation, for his false light claim Schatz must "prove that the defendants made false statements with knowledge or reckless disregard of their truth or falsity."  *Levesque*, 557 F. Supp. 2d at 164; *see also Levesque*, 560 F.3d at 88 n.5 ("[O]ur treatment of the defamation claim necessarily will address Levesque's false light argument.").  Because Plaintiff cannot show the statements in the political flyers are false (*see* Section II.B *supra*), or that they were made with actual malice (*see* Section II.C *supra*), his false light claim has the same fundamental flaws as his defamation claims and must be dismissed with prejudice.

18

In Maine "[o]ne who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability for invasion of privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other was placed." *Veilleux*, 206 F.3d at 134.  As in *Veilleux*, Plaintiff pleads absolutely no independent facts supporting his false light claim (Count III).  *See id.* ("The plaintiffs' false light claim was premised on precisely the same thirteen statements that underlay their defamation claim . . . .  *A fortiori*, plaintiffs cannot satisfy the more onerous standard of actual malice required by Maine law for their false light claim.").  Instead, Plaintiff merely pleads the legal definitions of false light (Compl. ¶ 53) and of actual malice (Compl. ¶ 54), then makes a generalized claim for damages (Compl. ¶ 55).  These legal conclusions are insufficient to defeat a Rule 12(b)(6) motion.  *Veilleux*, 206 F.3d at 134.

In addition, Plaintiff does not allege any facts supporting the basic legal elements of a false light claim: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Nelson v. Maine Times*, 373 A.2d 1221, 1223 (Me. 1977) (quoting RESTATEMENT (SECOND) OF TORTS § 652B (1977)).  The political flyers exclusively relate to Plaintiff's public duties, not to his private affairs, and "a complaint should minimally allege a physical intrusion upon premises occupied privately by a plaintiff for purposes of seclusion . . . [but] [t]his complaint makes no such allegation." *Id.*  Accordingly, Plaintiff's false light claim should be dismissed with prejudice.

CONCLUSION

For the foregoing reasons and for any additional reasons appearing to the Court,

Defendants move to dismiss the Complaint for failure to state a claim upon which relief can be

granted.

Respectfully submitted,

/s/ Alexia Pappas
Anne Birgel Cunningham
Alexia Pappas
VERRILL DANA LLP
One Portland Square
P.O. Box 586
Portland, ME  04112
Telephone: (207) 253-4470
Facsimile: (207) 774-7499
acunningham@verrilldana.com
apappas@verrilldana.com

Andrew M. Friedman (admitted *pro hac vice*)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, DC  20037
Telephone: (202) 457-5267
Facsimile: (202) 457-6315
afriedman@pattonboggs.com

*Counsel for Defendants Crossroads Media LLC,
Patti Heck, Michael Dubke, Arena Communications
LLC, Ohman Holdings LLC, Valcarce Holdings
LLC, Arena Holdings Inc., The Grassy Knoll LLC,
Richard J. Ohman, and Peter J. Valcarce*

February 25, 2011

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 25th day of February, 2011, I electronically filed the

foregoing DEFENDANTS' MOTION TO DISMISS WITH INCORPORATED

MEMORANDUM OF LAW with the Clerk of Court using the CM/ECF system, which sent a

notification of such filing to the following:

Barry K. Mills
Sally N. Mills
HALE & HAMLIN
4 State Street
P.O. Box 729
Ellsworth, ME  04605
(207) 667-2561
barry@halehamlin.com
sally@halehamlin.com

*Counsel for Plaintiff James M. Schatz*


/s/ Alexia Pappas
Alexia Pappas

*Counsel for Defendants Crossroads Media LLC,
Patti Heck, Michael Dubke, Arena Communications
LLC, Ohman Holdings LLC, Valcarce Holdings
LLC, Arena Holdings Inc., The Grassy Knoll LLC,
Richard J. Ohman, and Peter J. Valcarce*